**Spencer T. PENDERGRASS, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 34S00–9711–CR–623.

Supreme Court of Indiana.

Dec. 9, 1998.

Steven K. Raquet, Kokomo, for appellant.

Jeffrey A. Modisett, Attorney General, Kimberly MacDonald, Deputy Attorney General, Indianapolis, for appellee.

BOEHM, Justice.

A jury convicted Spencer T. Pendergrass of murder, neglect of a dependent, and resisting law enforcement. The trial court merged the murder and neglect counts, and sentenced Pendergrass to sixty years for murder and one year for resisting law en-

forcement to be served consecutively. In this direct appeal, Pendergrass raises two issues for our review: (1) did the trial court err by not excusing a juror and (2) did the trial court's response to the jury's request for additional guidance violate his constitutional right to be present.

## I. Failure to Discharge Juror

Pendergrass first argues that the trial court should have excused a juror and replaced her with an alternate juror because the juror "had developed a high state of anxiety/physical condition which rendered her unable/unwilling to perform her jury duties." He draws our attention to three distinct episodes during the course of the trial. First, Pendergrass notes that the juror expressed concern during voir dire about her ability to look at autopsy photographs. Neither the precise nature nor the extent of this concern is discernable from the record.[1] Second, Pendergrass points out that the juror arrived approximately thirty minutes late on the third day of trial and informed the bailiff that she was suffering from a migraine and was taking medication. The trial court questioned the juror in the presence of counsel and the defendant. The juror indicated that she "wasn't feeling well earlier this morning," but that she had taken medication and was "feeling better." In response to the trial court's questioning, she stated that she could give the case her full attention. The trial court then gave counsel for both parties an opportunity to question the juror, and

both declined. The trial court found that the juror was "physically and otherwise able to continue today," and counsel raised no objection. Third, Pendergrass notes that when the jurors were brought into the courtroom to review two exhibits after deliberations had begun, the juror "refused to look at both exhibits and kept her head down the entire time." At the time, defense counsel stated "I just want to make that observation for the record." He did not ask that the juror be questioned or that she be replaced with an alternate.

By failing to request the discharge of the juror or object to her continued service, Pendergrass has waived any argument on this issue.[2] *Cooper v. State*, 259 Ind. 107, 111–12, 284 N.E.2d 799, 801–02 (1972) (failure to object at trial to discharge of juror and substitution of alternate juror results in waiver).

## II. Jury Deliberations

Pendergrass next contends that "[t]he trial court erred in violating defendant's constitutional right to be present at all stages of the prosecution by improper ex-parte communications between judge and deliberating jury regarding jury instructions." Although he does not cite a specific constitutional provision, we understand Pendergrass' argument to allege a violation of Article I, Section 13 of the Indiana Constitution.[3] *See,*

1. The record does not include a transcript of voir dire. This somewhat vague concern about viewing autopsy photographs was mentioned by the deputy prosecutor *at another point in the record*.

2. We note that Indiana Trial Rule 47(B) provides for the selection of alternate jurors and states that they "shall replace jurors who, prior to the time the jury returns its verdict, become or are found to be unable or disqualified to perform their duties." It is within a trial court's discretion to invoke this rule, and we will reverse the trial court only for abuse of discretion. *Campbell v. State*, 500 N.E.2d 174, 181 (Ind.1986). Cases cited by Pendergrass upholding trial court decisions to remove a juror involve much clearer cases of inability to serve. *See Blevins v. State*, 259 Ind. 618, 624, 291 N.E.2d 84, 87 (1973) (juror suffered an asthmatic attack during trial); *Smith v. State*, 241 Ind. 311, 323–325, 170 N.E.2d 794, 800–01 (1960) (juror vomited, faint-

ed, was given first aid and sent home in a taxi). Pendergrass does not cite our more recent decision in *Campbell*, in which we upheld a trial court's decision to excuse a juror who was suffering from the flu, had to leave the courtroom on at least two occasions, and stated that she would have difficulty listening attentively to the evidence. 500 N.E.2d at 181. In contrast, the juror in this case stated that she had a migraine earlier, had taken medication, was feeling better, and could devote her full attention to the case. Moreover, her decision not to view certain exhibits a second time when they were passed to the jury after deliberations had begun does not require her replacement. We are aware of no requirement that jurors view exhibits a second time.

3. Although Pendergrass does not discuss the right to be present under the federal constitution, we note that neither the Sixth nor Fourteenth

*e.g., Foster v. State,* 267 Ind. 79, 82–83, 367 N.E.2d 1088, 1089 (1977).

## A. *The first two notes*

■ The trial court sent a tape recording of its reading of the final instructions to the jury room at the beginning of deliberations.[4] After retiring for deliberations, the jury sent out two notes that requested "guidance and additional clarification from the Court on whether the Jury needed to make specific findings as to the degree of offenses pertaining to Neglect of a Dependent and Count I[.]"[5] The trial court "responded to both notes that the Jury must refer to the Instructions with no further indications or specifications being given by the Court." The trial court did not advise counsel or the defendant of these notes until sometime after responding.

> Amendment presents a basis for reversal. The Confrontation Clause of the Sixth Amendment extends to situations related to the presentation of witnesses or evidence, when the right of cross-examination is implicated. *Kentucky v. Stincer,* 482 U.S. 730, 737–38, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987); *Ridley v. State,* 690 N.E.2d 177, 180 (Ind.1997). Because the trial court's ex parte communication with the jury did not deny Pendergrass an opportunity for cross-examination, there was no Sixth Amendment violation. *Id.* Under the Due Process Clause of the Fourteenth Amendment, "a defendant is guaranteed the right to be present at any stage of the criminal proceedings that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Stincer,* 482 U.S. at 745, 107 S.Ct. 2658. As discussed below, the trial court's communication with the jury was in substance a denial of its request for clarification. Pendergrass has not shown, or attempted to show, how this communication was critical to the outcome of his trial or how his presence would have contributed to the fairness of the procedure. Indeed, when advised of the ex parte communication some time after its occurrence but while the jury was still deliberating, Pendergrass' counsel (with Pendergrass present) indicated that the "[d]efense concurs with the Court's responses to both questions."

4. Although the practice of sending jury instructions to the jury room during deliberations is provided for by statute, IND.CODE § 35–37–2–2(5) (1998), we have not previously addressed the practice of sending a tape recording of the trial court's reading of final instructions to the jury room. The statute provides that the trial judge shall "(A) make the charge to the jury in writing; (B) number each instruction; and (C) sign the charge; if . . . requested to do so by the prosecut-

## 1. *The constitutional protection under case law*

■ We have repeatedly noted the proper procedure for trial courts to follow when a deliberating jury makes a request for additional guidance during its deliberations. The trial court should

> notify the parties so they may be present in court and informed of the court's proposed response to the jury *before* the judge ever communicates with the jury. When this procedure is not followed, it is an *ex parte* communication and such communications between the judge and the jury without informing the defendant are forbidden. However, although an *ex parte* communication creates a presumption of error, such presumption is rebuttable and does not constitute *per se* grounds for reversal.

ing attorney, the defendant, or the defendant's counsel." *Id.* The record is devoid of any such request. The section concludes by stating "[t]he court may send the instructions to the jury room," without specifying the form of the instructions, but presumably contemplating written instructions in view of (A) *supra. Id.* Moreover, a later section of the statute prohibits, in the case of "final instructions . . . submitted to the jury in written form," any "indication of the party or parties tendering any of the instructions [from appearing] on any instruction." *Id.* § 35–37–2–2(6). A tape recording of the instructions alleviates this concern, but at considerable expense to the convenience of the jurors who must then search through the tape to find the desired instruction. Although placing the court's convenience over the jurors', it presents no reversible error.

Pendergrass's assertion that this tape recording of the instructions "was provided to the jury without notice to the parties or their counsel" is plainly wrong. Brief of Appellant at 14–15. The trial court's intention to send the instructions to the jury room at the beginning of deliberations was made known to counsel prior to the commencement of deliberations. One of the court's proposed final instructions stated: "As the Court is sending a recording of the court's instructions with you to the jury room, you may be able to answer your questions by reviewing the court's instructions." The proposed instructions were made available to counsel the week before trial. When asked at trial if he had any objections to the instructions, defense counsel stated that he did not.

5. These are the words of the trial judge. The actual notes from the jury were not included in the record of proceedings.

When a trial judge responds to the jury's request by denying it, any inference of prejudice is rebutted and any error deemed harmless.

*Bouye v. State,* 699 N.E.2d 620, 628 (Ind. 1998) (citations omitted). In this case, the trial court erred by communicating with the jury prior to notifying the parties. However, the trial court's response merely to refer to the instructions was in substance a denial of the request for additional clarification and therefore harmless error. *Allen v. State,* 686 N.E.2d 760, 782 (Ind.1997) (trial court's ex parte communication to "[p]lease reread all the instructions" held to be harmless error), *petition for cert. filed* (U.S. Aug. 28, 1998) (No. 98–5855); *see also Denton v. State,* 455 N.E.2d 905, 909 (Ind.1983) (inference of prejudice rebutted when trial court sent all written final instructions to the jury room, without notification to the parties or counsel, in response to a jury request for a written definition of rape). As we noted in *Bouye,* "the prohibition against *ex parte* communications is . . . designed to prevent the jury from being improperly influenced by the judge." 699 N.E.2d at 629. The trial court's response in this case merely instructed the jurors to review the instructions already in their possession. The judge did not supplement those instructions or direct the jury's attention to any particular instruction. This response in no manner could have improperly influenced the jury.

#### 2. *The statutory protection*

■ Pendergrass also contends that this ex parte communication was in violation of Indiana Code § 34–1–21–6 (1993) (now codified with minor editorial changes at Indiana Code § 34–36–1–6 (1998)). This statute, in addition to being triggered by an explicit manifestation of disagreement among jurors about testimony, *see Bouye,* 699 N.E.2d at 627–28, also applies when a deliberating jury "desire[s] to be informed as to any point of law arising in the case[.]" IND.CODE § 34–1–21–6 (1993). It provides that in this event the jurors "may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their attorneys." *Id.* The statute does not require the

presence of or notice to the parties or their attorneys whenever the trial court responds to a jury request. Rather, notice or presence is required when "information" is given. Because nothing was given to the deliberating jury in this case, the statute was not violated. *Cf. Cape v. State,* 272 Ind. 609, 611, 400 N.E.2d 161, 163 (1980) (replaying trial testimony to a deliberating jury in the absence of, and without notice to, the defendant or his counsel held to be reversible error).

#### B. *A subsequent note*

■ As a final point, Pendergrass argues that the trial court committed reversible error in responding to an additional note from the jury that read, "We need to know (1) knowingly and intentionally; (2) knowingly or intentionally as this question comes from a question between the judge saying knowing or intentionally but then saying 'taking into account each essential element in the charge.'" In contrast to the two notes discussed above, the trial court informed counsel and the defendant of this note prior to responding. The trial court indicated its proposed response was to instruct the jurors to review and refer to the instructions they had already been given. Defense counsel indicated that he concurred with the proposed response. Having agreed to the propriety of this response at trial, Pendergrass cannot now assert error on appeal. Any claim of error is waived. *Rhinehardt v. State,* 477 N.E.2d 89, 94 (Ind.1985).

### Conclusion

The trial court's judgment is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.