**James C. DICKENSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 12A04–0411–CR–605.**

Court of Appeals of Indiana.

Oct. 13, 2005.

Transfer Denied Dec. 8, 2005.

---

Richard D. Martin, Martin & Stuard Law Office, Frankfort, for Appellant.

Steve Carter, Attorney General of Indiana, Ryan D. Johanningsmeier, Deputy Attorney General, Indianapolis, for Appellee.

1. *See* IC 35–41–5–2; IC 35–42–1–1.

## OPINION

KIRSCH, Chief Judge.

James C. Dickenson ("Dickenson") appeals both his conviction for conspiracy to commit murder,[1] a Class A felony, and his fifty-year sentence. On appeal he raises the following issues:

I. Whether it was fundamental error to instruct the jury on conspiracy to commit murder without also including an instruction on the elements of murder.

II. Whether defects in the charging information, which omitted the specific overt acts of the conspiracy, constituted fundamental error.

III. Whether the trial court's response to jury questions constituted fundamental error.

IV. Whether Dickenson's conviction for conspiracy to commit murder is supported by sufficient evidence.

V. Whether Dickenson was denied effective assistance of counsel.

VI. Whether the trial court erred in sentencing Dickenson to fifty years in prison.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In 1996, Louis D. Evans ("Evans"), the prosecutor for Clinton County, charged Dickenson with the attempted murder of Jessee Stinnett. A jury found Dickenson guilty, and he was sentenced to forty years in prison. Dickenson then filed a petition for post-conviction relief, which was denied. On review of that denial, our court reversed Dickenson's conviction and re-

manded for a new trial. Evans again prosecuted Dickenson for attempted murder, but the second trial ended in a mistrial on October 16, 2001.

Evans chose to prosecute the case a third time. While awaiting trial, Dickenson was placed in the Clinton County Jail where he met and was housed with a convicted forger named Wayne Smith ("Smith"). In early December 2001, Smith wrote a letter to Evans indicating that he had information relating to Dickenson's attempted murder case. Evans met with Smith, who supplied information pertaining to Dickenson's attempted murder charge. Based on this information, Smith later testified at Dickenson's third trial for attempted murder. The jury found Dickenson guilty of attempted murder and sentenced him to forty-eight years in prison.

While still housed with Dickenson, Smith sent a letter to Evans requesting another meeting. During this second meeting, Smith informed Evans that Dickenson sought to have someone "on the outside" killed. *Appellant's Br.* at 5. Evans contacted Detective Rick Morgan of the Clinton County Sheriff's Department to interview Smith.

During the interview, Smith said that he and Dickenson shared a cell pod,[2] and that Dickenson had been plotting to have someone killed. Smith related that he had told Dickenson about a fictitious friend, "Timothy Squires," who would do just about anything for money, including murder for hire. *Tr.* at 138.

Prompted by Smith's information, Detective Morgan contacted the Indiana State Police, and was referred to an undercover officer named Detective Michael Morris. A plan was created to have Detective Morris pose as Squires and meet with Dickenson in the inmate visitation area of the jail. Since jail policy required that each inmate prepare a monthly list of three persons permitted to visit, Smith placed the name "Timothy Squires" on Dickenson's visitation list.[3] Prior to the visit, the police wired the visitation booth at the Clinton County Jail to allow the visit to be videotaped without Dickenson's knowledge.

During their January 4, 2002 meeting, Dickenson told Detective Morris, who was posing as hit man Squires ("Squires"), that he needed someone removed. Squires confirmed that, through Smith, he knew about Dickenson's problem and "could take care of it." *Appellant's App.* at 173. Squires asked Dickenson whether he wanted "somebody to fall down and end up with a black eye? ... do you want it to be where the bruises go away or do you want it to be a permanent black eye?" *Id.* at 176. Dickenson responded, "I want that black eye to stay forever." *Id.* Squires clarified with Dickenson that he was not talking about "killing a dog." *Tr.* at 242. Dickenson then held up a piece of paper to the glass that separated the two men. Detective Morris later testified that the writing on the paper set forth the name of Prosecutor Evans, stated that Evans could be found at the Courthouse each morning, and included a physical description that accurately matched the physical description of Evans. *Tr.* at 243. Dickenson

---

2. A pod is a smaller housing unit that consists of ten rooms that open into a common dayroom. During the night each individual room in locked down, but from 6:00 a.m. until 11:00 p.m. the inmates can gather to eat meals, watch television, and converse. *Tr.* at 202.

3. From the record before us, it is unclear whether Smith or Dickenson added Squires's name to the visitation list. However, because Dickenson did not object to meeting with Squires, we presume that Dickenson knew that Squires was on his list.

agreed to contact Squires by letter, and pay him once freed from jail. After the visit, Dickenson had Squires's name removed from the visitation list.

Smith later contacted Detective Morgan to give him a letter (the "Letter"). *Tr.* at 157. The Letter purported to be signed by Dickenson, and stated that Dickenson "wanted this done before his trial date." *Id.* at 158. Detective Morgan testified that he did not think that the Letter had been written by Dickenson, but contacted Evans to report the development. Comparison of the Letter with another letter written by Smith revealed that Smith likely wrote the Letter. When confronted, Smith at first denied that he had written the Letter. Later, while admitting that the Letter was in his handwriting, Smith maintained that Dickenson had dictated the contents of the Letter and then signed it.

Dickenson was charged with conspiracy to commit murder. During his September 24, 2002 trial, Dickenson tendered proposed final instructions, which the trial court used without modifying and without objection. *Appellant's App.* at 132–35, 153–55. The trial ended in a mistrial after the jury became deadlocked during deliberations. A new judge was selected and Dickenson was retried on September 1, 2004. Dickenson did not tender additional instructions and approved the use of the same instructions to instruct the second jury.

During deliberations, the jury sent the judge three notes. The first requested a transcript of the video taken during the meeting at the Clinton County Jail, the second requested a transcript of the testimony of one of the State witnesses, and the third requested the legal definition of "an overt act." *Appellant's App.* at 316, 319–20. The transcript does not indicate how the notes were handled; however, the notes themselves contain the judge's handwritten and signed response. *Appellant's Br.* at 3, *Appellant's App.* at 316, 319–20.

The jury found Dickenson guilty of conspiracy to commit murder, and the trial court sentenced him to a fifty-year term of imprisonment to run consecutive to his prior forty-eight year sentence for attempted murder. Dickenson now appeals his conviction and his fifty-year sentence. Additional facts will be added as required.

## DISCUSSION AND DECISION

### I. Jury Instructions

■ Dickenson first contends that, having been charged with conspiracy to commit murder, the trial court erred when it failed to instruct the jury on the elements of murder. Dickenson did not object at trial. Usually, failure to object to jury instructions waives the issue on appeal. *Clay v. State,* 766 N.E.2d 33, 36 (Ind.Ct.App.2002). While acknowledging that he did not object to the jury instructions, Dickenson argues that we should address his claims despite this waiver because he was subjected to fundamental error.[4]

■■ The "fundamental error" rule applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial,

---

4. We note that Dickenson did not merely fail to object to the instructions. Instead, he expressly accepted the instructions, *Tr.* at 384, i.e., he invited the error. *See Oldham v. State,* 779 N.E.2d 1162, 1171 (Ind.App.2002), *trans. denied* (2003). While our courts have "suggested that this kind of invited error is not fundamental error," *Id.* at 1171–72, we may choose "to determine whether errors unavailable for review by virtue of their invitation were nevertheless fundamental error." *Id.* at 1172. We therefore address Dickenson's contention that the jury instructions amounted to fundamental error.

and the resulting error denies the defendant fundamental due process. *Boesch v. State,* 778 N.E.2d 1276, 1279 (Ind.2002). When determining whether a defendant suffered a due process violation based on an incorrect jury instruction, we look to the erroneous instruction not in isolation, but in the context of all relevant information given to the jury, including other instructions. *Id.* We find no due process violation where all such information, considered as a whole, does not mislead the jury as to a correct understanding of the law. *Id.; Manuel v. State,* 793 N.E.2d 1215, 1217–1218 (Ind.Ct.App.2003), *trans. denied.*

To convict Dickenson of conspiracy to commit murder, the State had to prove that, while having the intent to commit murder, Dickenson and Squires entered into an agreement to commit murder, and Dickenson performed an overt act in furtherance of the agreement. *See* IC 35–41–5–2; *Weida v. State,* 778 N.E.2d 843, 846 (Ind.Ct.App.2002). At Dickenson's request, the trial court instructed the jury, in part, as follows:

Final Instruction # 4

You are instructed that in order to constitute a conspiracy there must be an intelligent and deliberate agreement between the parties to do the act and commit the offense charged.

Final Instruction # 5

You are instructed that in this case the State of Indiana must prove, beyond a reasonable doubt, that James Dickenson had the intent to commit murder, agreed with another person to commit murder, and that some overt act was performed in furtherance of this agreement.

Final Instruction # 6

You are instructed that although a conspiracy may be inferred from acts of the parties in pursuance of an apparent criminal purpose which they may have in common, the evidence of a mere relationship or association between the parties is not sufficient to prove conspiracy.

*Appellant's App.* at 153–55.

Here, because Dickenson was charged with conspiracy, the State was not required to prove that murder was actually committed or even attempted. *Weida,* 778 N.E.2d at 846; *see Hammond v. State,* 594 N.E.2d 509, 515 (Ind.Ct.App.1992), *trans. denied.* Accordingly, the trial court appropriately focused on the alleged agreement between the parties and not the underlying felony. Viewing the jury instructions as a whole, the jury was properly instructed. The trial court did not commit fundamental error in instructing the jury.

**II. Charging Information**

Dickenson next asserts that the State's charging information failed to present an adequate statement of the overt acts performed in furtherance of the conspiracy. Generally, a challenge to the sufficiency of an information must be made by a motion to dismiss prior to arraignment. *Townsend v. State,* 632 N.E.2d 727, 730 (Ind.1994). Failure to assert error in an indictment or information results in waiver of that error. *Id.; Buzzard v. State,* 712 N.E.2d 547, 551 (Ind.Ct.App.1999), *trans. denied.* Dickenson did not challenge his information prior to trial, but seeks to avoid waiver on appeal by asserting fundamental error.

To be considered fundamental, the error here must be so prejudicial to the rights of Dickenson that he could not have received a fair trial. *Buzzard,* 712 N.E.2d at 551; *Marshall v. State,* 602 N.E.2d 144,

147 (Ind.Ct.App.1992), *trans. denied.* We agree that an information should contain the specific overt acts the accused performed in furtherance of the conspiracy, and that Dickenson's information was lacking in this respect. However, we cannot say that this defect was so prejudicial to Dickenson's rights that he did not receive a fair trial.

"An information that enables an accused, the court, and the jury to determine the crime for which conviction is sought satisfies due process." *Lampitok v. State,* 817 N.E.2d 630, 636 (Ind.Ct.App. 2004), *trans. denied* (2005). "Errors in the information are fatal only if they mislead the defendant or fail to give him notice of the charge filed against him." *Gordon v. State,* 645 N.E.2d 25, 27 (Ind.Ct.App.1995), *trans. denied.* "Although the State may choose to do so, it is not required to include detailed factual allegations in the charging instrument." *Richardson v. State,* 717 N.E.2d 32, 51 (Ind.1999) (citing IC 35–34–1–2).

Here, Dickenson had notice of the elements of conspiracy, understood that the conspiracy involved an agreement with Detective Morris posing as Squires, and knew that the underlying felony was murder. While the information did not refer to a specific overt act, Dickenson had notice that the State had to prove an overt act in furtherance of the conspiracy. We cannot say that the manner in which Dickenson was charged precluded him from knowing the nature of the charges he faced. *Gordon,* 645 N.E.2d at 27. The omissions in his information did not constitute fundamental error.

### III. Jury Questions

Dickenson further contends that the trial court's handling of three jury questions deprived him of the right to be present at critical stages in the proceeding. The transcript contains no information as to the procedure that the trial court followed in addressing the jury's questions. The three questions found in the record of proceeding, each of which have the trial judge's handwritten answer, are the only evidence that there was a communication from the jury.

During deliberations, the jury sent out three questions. Note 1 asked for a transcript of the videotape and commented on the tape's background noise. *Appellant's App.* at 316. The trial judge responded, "There is no transcript of the video." *Id.* Note 2 asked for a transcript of Ms. Hatfield's testimony, to which the trial judge responded, "We do not have a transcript of Ms. Hatfield's testimony. *Id.* at 319. Note 3 had the words, "Legal definition of an overt act." *Id.* at 320. The judge responded, "We don't have a legal definition of overt act to give you." *Id.* While defense counsel admits that he and the special prosecutor were informed in chambers about the notes, Dickenson contends that such action did not satisfy his right to be present at a critical stage of the proceedings.

Responding to a written communication from the jury implicates two protections—a common law protection and a statutory protection. *Bouye v. State,* 699 N.E.2d 620, 627 (Ind.1998). Dickenson contends that the trial court erred when it responded to the jury's request for information during deliberations without informing him of the communication. Dickenson argues that this ex parte communication between the court and jury violated his right to be present under both Article 1, Section 13 of the Indiana Constitution and IC 34–36–1–6.

#### A. The Constitutional Protection Under Case Law

Our supreme court has noted the following procedure for trial courts to follow

when a deliberating jury makes a request for additional guidance during its deliberations. *Stephenson v. State*, 742 N.E.2d 463, 492 (Ind.2001), *cert. denied*, 534 U.S. 1105, 122 S.Ct. 905, 151 L.Ed.2d 874 (2002); *Pendergrass v. State*, 702 N.E.2d 716, 719 (Ind.1998). The trial court should:

> notify the parties so they may be present in court and informed of the court's proposed response to the jury before the judge ever communicates with the jury. When this procedure is not followed, it is an ex parte communication and such communications between the judge and the jury without informing the defendant are forbidden. However, although an ex parte communication creates a presumption of error, such presumption is rebuttable and does not constitute per se grounds for reversal. When a trial judge responds to the jury's request by denying it, any inference of prejudice is rebutted and any error deemed harmless.

*Stephenson*, 742 N.E.2d at 492; *Pendergrass*, 702 N.E.2d at 719–20; *Bouye*, 699 N.E.2d at 628.

In the instant case, it is unclear when the parties were informed about the notes. Communication with the jury without prior notification to the parties would be error. However, here, the judge did not supplement the jury's instructions. Instead, he merely denied the jury's request for additional information. Therefore, any error resulting from this communication was harmless. *See Stephenson*, 742 N.E.2d at 492 (judge-jury communication outside defendant's presence was harmless error

where court denied jury's request to listen to defendant's taped statement for a second time and to review depositions that were already read into evidence).

**B. The Statutory Protection**

▬ Dickenson also contends that this ex parte communication violated IC 34–36–1–6.[5] This statute is triggered (1) by an explicit manifestation of disagreement among jurors about testimony, *see Bouye*, 699 N.E.2d at 627–28, or (2) when a deliberating jury "desire[s] to be informed as to any point of law arising in the case[.]" IC 34–36–1–6. Under IC 34–36–1–6, jurors "may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their attorneys." The statute does not require the presence of or notice to the parties or their attorneys whenever the trial court responds to a jury request. *Pendergrass*, 702 N.E.2d at 720. Rather, notice or presence is required when *information* is given. *Id.* Because nothing was given to the deliberating jury in this case, the statute was not violated. *Id.*

**IV. Sufficiency of the Evidence**

Dickenson next argues that the evidence was insufficient to support his conviction for conspiracy to commit murder. Our standard of review for sufficiency claims is well settled. We do not reweigh the evidence or assess the credibility of witnesses. *Riehle v. State*, 823 N.E.2d 287, 292 (Ind.Ct.App.2005), *trans. denied; Weida*, 778 N.E.2d at 846. We look to the evidence and the reasonable inferences to be drawn therefrom that support the ver-

---

**5.** IC 34–36–1–6 provides:
If, after the jury retires for deliberation:
 (1) there is a disagreement among the jurors as to any part of the testimony; or
 (2) the jury desires to be informed as to any point of law arising in the case; the

jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

dict. *Weida,* 778 N.E.2d at 846. We will affirm the convictions if there is sufficient probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Fry v. State,* 748 N.E.2d 369, 373 (Ind.2001).

To convict Dickenson of conspiracy to commit murder, the State had to prove that (1) with intent to commit murder, (2) Dickenson and Squires entered into an agreement to commit murder, and (3) Dickenson performed an overt act in furtherance of the agreement. *Id.* at 374; *Weida,* 778 N.E.2d at 846; *see* IC 35–41–5–2. Dickenson contends that the State failed to prove each of these elements.

We first note that the State is not required to establish the existence of a formal express agreement to prove a conspiracy. *Id.; Cockrell v. State,* 743 N.E.2d 799, 804 (Ind.Ct.App.2001). " 'It is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to commit the offense.' " *Weida,* 778 N.E.2d at 847 (quoting *Porter v. State,* 715 N.E.2d 868, 871 (Ind.1999)). An agreement can be inferred from circumstantial evidence, which may include the overt acts of the parties in furtherance of the criminal act. *Id.; Wallace v. State,* 722 N.E.2d 910, 913 (Ind.Ct. App.2000) (citing *Chambers v. State,* 526 N.E.2d 1176, 1178 (Ind.1988)). Likewise, to determine whether the defendant had the requisite intent to commit the crime alleged, " '[t]he trier of fact must usually resort to circumstantial evidence or reasonable inferences drawn from examination of the circumstances surrounding the crime.' " *Brown v. State,* 659 N.E.2d 652, 657 (Ind.Ct.App.1995), *trans. denied* (1996) (quoting *Davis v. State,* 635 N.E.2d 1117, 1120 (Ind.Ct.App.1994)).

Dickenson contends that the State failed to prove intent to commit murder and that an overt act was performed in furtherance of the conspiracy to commit murder. Collapsing together the elements of intent and agreement, Dickenson asserts that without intent to commit murder, there could have been no agreement to commit murder. While admitting that the parties discussed causing a permanent black eye, and that conspiracy to commit battery could have been proven, Dickenson contends that without words pertaining to murder, the evidence was insufficient to find Dickenson guilty of conspiracy to commit murder.

Testimony at trial revealed that Dickenson had been talking in the cell about a plot to have somebody killed, *Tr.* at 137, and that Smith had told Dickenson that he knew someone who "could make that happen for him." *Id.* Another inmate, Kevin Bray, testified that he overheard Dickenson say to Smith that he wanted "Louie [Evans] hit. Taken out." *Tr.* at 313. The jury also heard reluctant testimony from inmate James Robinson, who said that Smith had set up Dickenson and could not be trusted. The jury weighed conflicting testimony and conflicting credibility, and returned a verdict of guilty. In reviewing a sufficiency of the evidence claim, we do not reweigh the evidence or assess the credibility of the witnesses. *Riehle,* 823 N.E.2d at 292. We find sufficient probative evidence from which a reasonable jury could have found that Dickenson had the intent to commit murder.

Dickenson next contends that there was insufficient evidence that he committed an overt act in furtherance of the conspiracy to commit murder. During its opening statement, the State asserted that to convict the Dickenson, the State had to prove that Squires and Dickenson agreed to commit murder, that Dickenson had the intent to commit murder, and that he performed an overt act by "helping

prepare a letter concerning the details of that agreement." *Tr.* at 93. The State also conceded that failure to prove any of these three elements would prevent the jury from finding the defendant guilty. *Id.* Dickenson responded that there was no evidence of either an agreement to commit murder or of an overt act performed in furtherance of such an agreement. *Id.* at 99–100. As such, Dickenson warned the jury to take special note that the key testimony came from an informant, Smith, who was a convicted thief, forger, and an admitted liar. *Id.* at 98.

The jury saw the videotape of the Dickenson–Squires meeting, heard testimony from inmates and police officers, saw the letter that Smith testified he had written on Dickenson's behalf, and was informed of Smith's self-interest and suspect credibility. The handwriting expert opined, but could not be certain, that the signature on the letter more likely was Smith's than Dickenson's. Upon this evidence, the jury found Dickenson had the intent to commit murder, had entered into an agreement, and performed an overt act in furtherance of the conspiracy. Since we do not reweigh the evidence or assess the credibility of witnesses, we find there was sufficient evidence that the letter was an overt act in furtherance of the conspiracy.

## V. Ineffective Assistance of Counsel

Dickenson next contends that his trial counsel was ineffective for (1) failing to object to the faulty Information; (2) failing to properly cross-examine Smith and Detective Morgan; and (3) failing to pursue an abandonment of conspiracy defense. We analyze claims of ineffective assistance of counsel according to a two-part test announced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Jackson v. State,* 683 N.E.2d 560, 562 (Ind.1997); *Conrad v. State,* 747 N.E.2d 575, 586 (Ind.Ct.App.

2001). To prevail on such a claim, a defendant must demonstrate both deficient performance and resulting prejudice. *Douglas v. State,* 663 N.E.2d 1153, 1154 (Ind. 1996); *Conrad,* 747 N.E.2d at 586. A deficient performance is that which falls below an objective standard of reasonableness. *Conrad,* 747 N.E.2d at 586. Prejudice exists when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Cook v. State,* 675 N.E.2d 687, 692 (Ind.1996); *Conrad,* 747 N.E.2d at 586.

There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Monegan v. State,* 721 N.E.2d 243, 250 (Ind.1999); *Conrad,* 747 N.E.2d at 586. Here, Dickenson "must offer strong and convincing evidence to overcome the presumption that counsel prepared and executed an effective defense." *Benefiel v. State,* 716 N.E.2d 906, 912 (Ind.1999), *cert. denied,* 531 U.S. 830, 121 S.Ct. 83, 148 L.Ed.2d 45 (2000). Although egregious errors may be grounds for reversal, we do not second-guess strategic decisions requiring reasonable professional judgment even if the strategy or tactic, in hindsight, did not best serve the defendant's interests. *Id.* " 'Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord that decision deference.' " *Conrad,* 747 N.E.2d at 586 (quoting *Conner v. State,* 711 N.E.2d 1238, 1248 (Ind.1999), *cert. denied,* 531 U.S. 829, 121 S.Ct. 81, 148 L.Ed.2d 43 (2000)).

Dickenson first asserts that trial counsel was ineffective because [he] did not object to the Information and failed to tender an instruction on the elements of murder. Our court has held that a defendant is not prejudiced by counsel's failure

to object to charging information or an instruction if the alleged error with the information is not fundamental. *Smith v. State*, 792 N.E.2d 940, 944–45 (Ind.Ct.App. 2003), *trans. denied.* As noted above, failure to include an instruction on murder was not error. Likewise, failure to object to the Information, which provided sufficient detail of the charges against Dickenson to allow him to prepare his defense, was not fundamental error. *Id.; see Lawrence v. State*, 665 N.E.2d 589, 592 (Ind.Ct. App.1996), *trans. denied* (holding that charging information for attempted murder, which failed to include element of specific intent to kill, was adequate for preparation of defense). Thus, having failed to demonstrate any prejudice arising from trial counsel's failure to object to the charging information or the instruction, Dickenson has failed to demonstrate that he was denied the effective assistance of counsel. *Smith*, 792 N.E.2d at 945.

■ Dickenson next contends that his trial counsel was ineffective for failing to reveal discrepancies in the testimony of Smith and Detective Morgan. Reviewing the record before us, we cannot agree. During cross-examination, both Detective Morgan and Smith were questioned extensively about what they remembered, and challenged on inconsistencies. Testimony from inmate Robinsons cast doubt on Smith's motives and credibility. Trial counsel was not ineffective in questioning the witnesses, nor has Dickenson shown that trial counsel's tactics prejudiced him.

■ Dickenson finally contends that his trial counsel was ineffective for failing to offer the defense of abandonment. To argue abandonment, an attorney would essentially be admitting that there had been a conspiracy but that the defendant had abandoned the plan before execution. We cannot say that it was error for trial counsel to emphasize the lack of agreement,

especially in light of evidence that did not clearly prove abandonment. Here, Dickenson was in prison and was unable to show an act of free will that proved withdrawal from the conspiracy. The best the attorney could have done was highlight ambiguous actions or inaction and hope the jury would be convinced of abandonment. It was not error to fail to argue this defense. Likewise, Dickenson has failed to offer unambiguous evidence that Dickenson abandoned the conspiracy. Trial counsel was not ineffective for failing to argue the abandonment defense.

## VI. Sentencing

Dickenson raises two issues related to the propriety of his fifty-year sentence: (1) that his sentence was imposed in violation of *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); and (2) that his sentence was inappropriate in light of the nature of the offense and the character of the offender.

In *Blakely*, the United States Supreme Court held that "a trial court may not impose a sentence greater than the presumptive sentence unless one of the following conditions is present: (1) The facts supporting an enhanced sentence are found by a jury or admitted by the defendant; (2) the defendant has a criminal history; or (3) the defendant has waived his right to a jury at sentencing." Our supreme court reiterated that use of prior criminal convictions as an aggravating circumstance does not violate *Blakely*. *Smylie v. State*, 823 N.E.2d 679, 682 (Ind.2005).

■ In the instant case, the trial court enhanced Dickenson's sentence based, in part, upon Dickenson's criminal history set forth in his "Pre–Sentence Report." *Tr.* at 433. The trial court focused, particularly, on Dickenson's "previous conviction for Attempted Murder." *Id.* "By its own

terms, and as consistently recognized by our cases analyzing *Blakely,* an enhancement based upon criminal history does not trigger a *Blakely* analysis." *Dillard v. State,* 827 N.E.2d 570, 575 (Ind.Ct.App. 2005), *trans. denied.*

After the jury returned a guilty verdict on Dickenson's conspiracy charge, the trial court ordered the probation department to prepare and file a presentence investigation report ("PSI"). *Appellant's App.* at 329. At the sentencing hearing, Dickenson admitted that he had had the opportunity to review the PSI, and declined the court's offer to make any additions or changes. Included among the crimes committed was Dickenson's attempted murder conviction. The only reason to file a PSI is to provide information to the court for use at individualized sentencing. *Dillard,* 827 N.E.2d at 576. Because of its importance in sentencing, the relevant inquiry regarding the PSI usually concerns its accuracy. "To that end, we are generally concerned only with insuring that the defendant had an opportunity to examine the report and challenge any inaccuracies container therein." *Id.*

Dickenson's PSI reflects his prior conviction for attempted murder. The transcript of the sentencing hearing reveals that the trial court gave Dickenson the opportunity to review and object to the contents of the PSI. He cannot now claim that the trial court improperly considered his attempted murder conviction at his sentencing hearing for conspiracy to commit murder. The trial court did not act in violation of *Blakely* by using the prior criminal history as an aggravator. *See Chupp v. State,* 830 N.E.2d 119, 126 n. 12 (Ind.Ct.App.2005) (failure to object to or challenge presentence investigation report is "tantamount to an admission to the accuracy of the facts contained therein").

Dickenson next contends that his fifty-year sentence was inappropriate in light of the nature of the offense and the character of the offender. Sentencing decisions are within the trial court's discretion, and will be reversed only upon a showing of abuse of discretion. *Matshazi v. State,* 804 N.E.2d 1232, 1238 (Ind.Ct. App.2004), *trans. denied; Powell v. State,* 751 N.E.2d 311, 314 (Ind.Ct.App.2001). The trial court's sentencing discretion includes the determination of whether to increase presumptive penalties. *Matshazi,* 804 N.E.2d at 1239; *Madden v. State,* 697 N.E.2d 964, 967 (Ind.Ct.App.1998), *trans. denied.*

To convict Dickenson of conspiracy to commit murder, the jury must have believed that Dickenson agreed with an undercover police officer to murder Evans, the Clinton County Prosecutor. At the sentencing hearing, Evans testified that a civilized society could only exist where there are rules and people, like police, prosecutors, and judges, to enforce those rules. *Tr.* at 428. Further, he asserted that the enforcers of rules must do their jobs without worrying about their life or safety. *Id.* To this end, Evans argued that protection of police, prosecutors, and judges helps the functioning of society. *Id.* at 429.

The trial court was swayed by the public policy arguments that crimes against legal officials deserve more deterrent than other crimes of conspiracy. Noting that Dickenson had a previous criminal history that included a conviction for attempted murder, and finding no mitigating factors, the trial court sentenced Dickenson to fifty years in prison to run consecutive with his attempted murder charge. We cannot say that the sentence was inappropriate in light of the nature of the offense and the

character of the offender. *See Ind. Appellate Rule 7(B)*.

Affirmed.

MAY, J., and ROBB, J., concur.