Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 12 2014, 10:02 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**TERI A. FLORY**
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONICA A. TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STEVEN COX, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A05-1305-CR-216 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE CIRCUIT COURT
The Honorable Donald L. Daniel, Judge
The Honorable Steven P. Meyer, Judge Pro Tempore
Cause No. 79C01-1203-FA-00009

**March 12, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Steven Cox ("Cox") was convicted in Tippecanoe Circuit Court of Class A felony conspiracy to commit dealing in methamphetamine. Cox appeals his conviction and argues that the evidence is insufficient to establish that there was an agreement between Cox and his co-conspirators to manufacture methamphetamine and that he performed an overt act in furtherance of that agreement.

Concluding that Cox's argument is simply a request to reweigh the evidence and the credibility of the witnesses, we affirm.

**Facts and Procedural History**

In January 2012, certain individuals, including Cox, were manufacturing methamphetamine in an apartment building in Lafayette, Indiana. The apartment building was within one thousand feet of three schools and two family housing complexes.

Lindsay Evans ("Evans") resided in one of the five apartments in the building. Philip Santoro ("Santoro") was at one point involved in a romantic relationship with Evans. Floyd Idle ("Idle") lived in another apartment in the building, and Evans considered Idle to be a father figure. All of these individuals were addicted to methamphetamine and continually manufactured (or assisted in the manufacture of) methamphetamine in Evans' apartment.

On January 30, 2012, Melissa Southern's ("Southern") residence was under surveillance pursuant to a tip from a confidential informant that methamphetamine was being manufactured in her home. During the surveillance, a police officer observed Cox

2

and Southern leave the home in Santoro's truck. Cox and Southern purchased pseudoephedrine at a supermarket pharmacy and returned to Southern's home. Southern remained at her home, and Cox picked up Santoro and Santoro's son. Cox and Santoro intended to proceed to Evan's apartment to manufacture methamphetamine. Evans allowed Cox to manufacture methamphetamine in her home in exchange for half of the amount of methamphetamine he produced. Idle helped Evans dispose of the waste from the manufacturing process and would also allow the manufacture of methamphetamine in his apartment.

As he was driving to Evans' apartment, Cox failed to use his turn signal, and therefore, Lafayette Police Officer Scott Anderson ("Officer Anderson") initiated a traffic stop. Cox identified himself to Officer Anderson as Gerald Cox, which is his brother's name. Officer Anderson arrested Cox because he knew that Cox was false informing and driving on a suspended license. During the search incident to arrest, officers found a syringe in Cox's pocket and they also found 103 pseudoephedrine pills during the search of Cox's vehicle. Santoro, who was still in the vehicle, was not searched or arrested at that time.

Cox agreed to give a video-recorded interview to the investigating officers. Cox told the officers that methamphetamine was frequently manufactured at Evans' apartment. Using the information provided by Cox, in addition to other information known to the officers, Lafayette police officers obtained a warrant to search Evans' apartment. During the search, officers found the following items associated with the manufacture of methamphetamine: empty containers of camp fuel, drain opener, drain cleaner, a syringe,

3

plastic bags, empty blister packages of pseudoephedrine, ammonia sulfate, lithium battery casings, coffee filters, and a plastic soda bottle with a tube attached to the lid. A plastic bottle used to manufacture methamphetamine was also found in a garbage can outside the apartment.

On February 7, 2012, Cox, Santoro, Evans, Idle, and Haley Hann were charged with Class A felony conspiracy to commit dealing in methamphetamine and Class A felony dealing in methamphetamine. Cox was also charged with Class A misdemeanor possession of paraphernalia and Class A misdemeanor operating a vehicle while suspended. Cox's three-day jury trial commenced on March 5, 2013. Before the close of the evidence, Cox agreed to plead guilty to possession of paraphernalia and operating a vehicle while suspended. The jury found him guilty of both Class A felony charges.

On April 9, 2013, the trial court sentenced Cox to thirty-two years for the Class A felony conspiracy to commit dealing in methamphetamine conviction, with twenty-two years executed in the Department of Correction, five years suspended to supervised probation and five years suspended to unsupervised probation. Cox was ordered to serve concurrent one-year terms for the Class A misdemeanor convictions. The trial court vacated Cox's conviction for dealing in methamphetamine for double jeopardy reasons. Cox appeals his conspiracy to commit dealing in methamphetamine conviction.

**Standard of Review**

When we review a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. Chappell v. State, 966 N.E.2d 124, 129 (Ind. Ct. App. 2012) (citing McHenry v. State, 820 N.E.2d 124, 126 (Ind.

4

2005)), trans. denied. Rather, we consider only the probative evidence supporting the conviction and the reasonable inferences to be drawn therefrom. Id. If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, then the judgment will not be disturbed. Baumgartner v. State, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008).

**Discussion and Decision**

Cox argues that his conspiracy to commit dealing in methamphetamine conviction is not supported by sufficient evidence because the State failed to prove that Cox had an agreement with his charged co-conspirators to commit manufacturing methamphetamine and/or that he performed an overt act in connection with the agreement. "A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony." Ind. Code § 35-41-5-2. Furthermore, "[t]he state must allege and prove that either the person or the person with whom he agreed performed an overt act in furtherance of the agreement." Id. When establishing the existence of a conspiracy, the State is not required to prove the existence of a formal express agreement. Dickenson v. State, 835 N.E.2d 542, 552 (Ind. Ct. App. 2005), trans. denied. Although relationship and association with the alleged co-conspirator, standing alone, is insufficient to establish a conspiracy, an agreement can be inferred from circumstantial evidence, which may include the overt acts of one of the parties in furtherance of the criminal act. Id.

5

Indiana Code section 34-38-4-1.1 provides that "[a] person who . . . knowingly or intentionally . . . manufactures . . . methamphetamine, pure or adulterated; . . . commits dealing in methamphetamine[.]"[1] The term "manufacture" includes, among other things, production, preparation or processing of a controlled substance. Ind. Code § 35-48-1-18. Cox's charging information provides in pertinent part:

> During 2012, in Tippecanoe County, State of Indiana, [Evans, Santoro, Cox, Hann, Idle] and/or other unknown person(s) did, with the intent to manufacture Methamphetamine, agree to manufacture Methamphetamine, and one or more of the following overt acts were performed in furtherance of said agreement, to wit: Evans, Santoro, Cox, Hann, Idle, and/or unknown other(s) would obtain precursors, chemical reagents, or other materials to make Methamphetamine; Evans, Santoro, Cox, Idle, and/or unknown other(s) would bring precursors, chemical reagents, or other materials to the apartment building where Evans resided . . . ; Evans, Santoro, Cox, Hann, Idle, and/or unknown other(s) would keep materials for manufacturing Methamphetamine at various locations in Evans' apartment building; on one or more occasion Evans, Santoro, Cox, Hann, Idle, and/or unknown other(s) would manufacture Methamphetamine in said apartment building . . . .

Appellant's App. pp. 15-16.

Cox argues that the State only proved that he was a methamphetamine addict and had purchased pseudoephedrine to give to Santoro who would manufacture methamphetamine for Cox. In support of his argument, Cox emphasizes the fact that police officers never saw Cox at Evans' apartment while it was under surveillance.

At trial, Amy Morinskey, who was romantically involved with Santoro and admitted to manufacturing methamphetamine at Evans' apartment, testified that she knew

---

[1] The offense is generally classified as a Class B felony. But Cox committed the crime within one thousand feet of three schools and two family housing complex, which elevated the offense to a Class A felony. See Ind. Code § 35-48-4-1.1(b).

Cox and had seen him at Evans' apartment. Cox helped Morinskey manufacture methamphetamine, and she used methamphetamine manufactured by Cox. Tr. pp. 94-95; 101. Evans also testified that Cox manufactured methamphetamine at her apartment in January 2012. Evans stated that on some date in January 2012, Cox and Santoro were manufacturing methamphetamine in her bathroom when it caught on fire. Tr. p. 248. Evans testified that she and Cox would manufacture methamphetamine at the same time to "see who could make the other one cough better." Tr. p. 249. She explained that "when you shoot up it makes you cough if it's good." Id. Evans stated that she did not know how to use the needle to "shoot up" and Cox would help her with the needle. Id. Finally, Evans testified that Cox understood that Evans would receive half of the methamphetamine manufactured in her apartment, and Cox abided by that rule. Tr. p. 284. Idle and Hann, who also used the methamphetamine manufactured in Evan's apartment, assisted in the manufacturing process by disposing of the waste.

Santoro testified that he made methamphetamine with Cox during January 2012 at Evans' apartment. Tr. pp. 191-92. Cox manufactured methamphetamine at the apartment approximately two dozen times during that month. Santoro explained that Cox generally used the "anhydrous" method to manufacture methamphetamine, but also used the "shake and bake" method. Tr. p. 192. Santoro stated that methamphetamine manufacturing was occurring everyday at Evans' apartment. Santoro admitted that he and Cox gave methamphetamine to different individuals at the apartment.

On January 30, 2012, Cox told Santoro that he was eligible to purchase more pseudoephedrine. Santoro proceeded to Southern's residence where Cox was located and

7

used methamphetamine with Cox and Southern. The three discussed manufacturing methamphetamine and whether they would do so at Southern's home "or elsewhere". Tr. p. 197. Eventually, they decided to manufacture methamphetamine at Evans' apartment because "everything was there already . . . and [they] didn't have to go and get anhydrous and everything that goes along with that." Tr. p. 198; see also Tr. pp. 223-34. Santoro explained that using the anhydrous method produces higher quality methamphetamine than the one-pot method.[2] Tr. p. 199. But because anhydrous was difficult and dangerous to obtain, Cox and Santoro agreed to use the one-pot method on that date. Id. Santoro gave his box of pseudoephedrine to Cox and Southern, and because they were eligible to purchase more pseudoephedrine, Cox and Southern proceeded to a pharmacy to make that purchase.

Southern's home was under surveillance when Cox and Southern left her home and drove to the pharmacy to purchase pseudoephedrine. The officers observed them returning to Southern's home. Southern remained at her home, and Cox picked up Santoro and began to drive towards Evans' apartment, and these movements were observed by the officers. When Cox failed to use his turn signal, the officers initiated the traffic stop, which led to Cox's arrest.

We must affirm Cox's conviction unless no reasonable fact-finder could find that the State proved the elements of conspiracy to manufacture methamphetamine beyond a reasonable doubt. See Baumgartner, 891 N.E.2d at 1137. The evidence presented at trial

---

[2] Santoro also described for the jury how he and Cox had stolen anhydrous ammonia and the dangers associated with that activity. Tr. p. 199.

8

established an agreement between Cox and his co-conspirators to manufacture methamphetamine and Cox's pseudoephedrine purchase on the date of his arrest was an overt act in furtherance of that agreement. For all of these reasons, we affirm Cox's conviction for Class A felony conspiracy to commit dealing in methamphetamine.[3]

Affirmed.

BRADFORD, J., and PYLE, J., concur.

---

[3] Cox argues, in part, that the evidence was insufficient to support his conviction because Santoro and Evans initially told the police that Cox was only a methamphetamine user but did not manufacture it. These inconsistencies were extensively explored during questioning of those witnesses, and as we have often stated, it is the fact-finder's role to determine a witness's credibility, which we will not reweigh on appeal.