## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Nov 23 2015, 8:32 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

---

ATTORNEY FOR APPELLANT

Susan E. Schultz
Corydon, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

| | |
|---|---|
| Walter Davis, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellees-Plaintiff* | November 23, 2015 <br><br> Court of Appeals Case No. <br> 31A04-1501-CR-38 <br><br> Appeal from the Harrison Superior Court <br><br> The Honorable Curtis Eskew, Special Judge <br><br> Trial Court Cause No. <br> 31D01-1312-FB-774 |

**Bailey, Judge.**

# Case Summary

Walter Davis ("Davis") was convicted after a jury trial of Dealing in a Controlled Substance, as a Class B felony.[1] He now appeals.

We affirm.

# Issues

Davis raises three issues for our review, which we restate as:

    I.    Whether the trial court engaged in impermissible *ex parte* communication with the jury;

    II.    Whether there was sufficient evidence to sustain the judgment; and

    III.    Whether Davis's sentence was inappropriate in light of the nature of his offense and his character.

# Facts and Procedural History

In 2012 or 2013, Christopher Mattingly ("Mattingly") was a subject of a Harrison County Sheriff's Department narcotics investigation. During the investigation, Mattingly permitted investigators to enter his home, where investigators found narcotic pills for which Mattingly did not have a

---

[1] Ind. Code § 35-48-4-2(a)(1)(C). The Indiana General Assembly enacted substantial revisions to Indiana's criminal laws, effective July 1, 2014. We refer at all times to the provisions of the Code in effect at the time of Davis's offense.

prescription. As a result of this episode, Mattingly agreed to work as a confidential informant.

[5]     In March 2013, Mattingly identified Davis to Harrison County Sheriff's Detective Steve Coleman ("Detective Coleman") as a possible source of narcotics. Mattingly and Detective Coleman arranged for Mattingly to make a controlled purchase of oxycodone pills from Davis on March 5, 2013. A search of Indiana Bureau of Motor Vehicles records indicated that Davis lived at 424 Lemmon Street in Corydon.

[6]     On March 5, 2013, Detective Coleman and another officer met with Mattingly at a neutral location, searched Mattingly, and provided him with a $100 bill and a hoodie wired with audio-visual recording equipment. Detective Coleman then drove with Mattingly to Lemmon Street. Detective Coleman and other officers maintained visual surveillance of the street.

[7]     Mattingly exited Detective Coleman's car and walked to the front porch of 430 Lemmon Street. Mattingly knocked on the door, and Davis answered. The two went inside the home, and Mattingly used the $100 bill to purchase five oxycodone tablets from Davis. A third individual was in the residence at some point during the transaction, but Mattingly had little interaction with this person.

[8]     After completing the purchase of oxycodone, Mattingly left 430 Lemmon Street and returned to Detective Coleman's vehicle. Mattingly turned the pills over to

Detective Coleman, who searched Mattingly for other items and then permitted Mattingly to leave.

[9] On December 9, 2013, the State charged Davis with Dealing in a Controlled Substance, as a Class B felony, and Maintaining a Common Nuisance, as a Class D felony.[2] A warrant was issued for Davis's arrest; the warrant was served and Davis was arrested on December 10, 2013. On January 2, 2014, the State alleged Davis to be a Habitual Substance Offender;[3] this allegation was dismissed before trial.

[10] On November 18 and 19, 2014, the State tried Davis to a jury. At the conclusion of the trial, the jury found Davis guilty of Dealing in a Controlled Substance. The jury could not reach a consensus on the charge of Maintaining a Common Nuisance; the State moved to dismiss the charge, and the trial court granted that motion. A sentencing hearing was conducted on December 29, 2014. At that hearing, the trial court entered judgment of conviction against Davis for Dealing in a Controlled Substance, and sentenced Davis to thirteen years imprisonment.

[11] This appeal ensued.

# Discussion and Decision

---

[2] I.C. § 35-48-4-13(b).

[3] I.C. § 35-50-2-10. This provision of the Indiana Code was repealed, effective July 1, 2014.

# *Ex Parte* Communication

[12] In this appeal, Davis first contends that the trial court engaged in *ex parte* communication with the jury in response to a question from the jury regarding the meaning of "maintain" as it was used with respect to the charge that Davis had committed the offense of Maintaining a Common Nuisance.

[13] Addressing constitutional claims related to *ex parte* communication between the court and a jury, our supreme court has "repeatedly noted the proper procedure for trial courts to follow when a deliberating jury makes a request for additional guidance during its deliberations." *Pendergrass v. State*, 702 N.E.2d 716, 719 (Ind. 1998). The court must

> notify the parties so they may be present in court and informed of the court's proposed response to the jury *before* the judge ever communicates with the jury. When this procedure is not followed, it is an *ex parte* communication and such communications between the judge and the jury without informing the defendant are forbidden. However, although an *ex parte* communication creates a presumption of error, such presumption is rebuttable and does not constitute *per se* grounds for reversal. When a trial judge responds to the jury's request by denying it, any inference of prejudice is rebutted and any error deemed harmless.

*Pendergrass v. State*, 702 N.E.2d 716, 719-20 (Ind. 1998) (quoting *Bouye v. State*, 699 N.E.2d 620, 628 (Ind. 1998)). The prohibition against *ex parte* communications is to "'prevent the jury from being improperly influenced by the judge.'" *Id.* (quoting *Bouye*, 699 N.E.2d at 629).

[14] Our review of the record convinces us that there is no appealable issue on this point. Davis was not convicted of Maintaining a Common Nuisance; instead,

the jury was hung on this question, and the State dismissed the charge. There is thus no basis for an allegation of error from which Davis might argue for reversal.

## Sufficiency of the Evidence

Davis's second issue asks us to consider whether the trial court erred in denying his motion for a directed verdict as to his charge for Dealing in a Controlled Substance, as a Class B felony. "[I]n order for a trial court to grant a directed verdict, there must be a complete lack of evidence on a material element of the crime or the evidence must be without conflict and susceptible to only an inference in favor of the defendant's innocence." *Huber v. State*, 805 N.E.2d 887, 890 (Ind. Ct. App. 2004). We accordingly treat Davis's argument on appeal as one challenging the sufficiency of the evidence. *Id.*

Our standard of review in such cases is well settled. We consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh evidence. *Id.* We will affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)). "[T]he evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." *Id.* (quoting *Pickens v. State*, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001)).

[17] Here, Davis was charged with Dealing in a Controlled Substance, as a Class B felony. To convict Davis of this offense, the State was required to prove beyond a reasonable doubt that Davis delivered or sold oxycodone pills to a confidential informant on or about 424 Lemmon Street in Corydon. *See* I.C. § 35-48-4-2(a)(1)(C); App'x at 7.

[18] In his brief, Davis contends that there was insufficient evidence of his possession of oxycodone prior to the transaction. In particular, Davis argues that the procedure used during the controlled buy was "deficient," Appellant's Br. at 12, that a third individual was present in the home and could have been the source of the drugs, and that Mattingly's motivations in participating in the controlled buy were questionable. Davis thus insists that the entirety of the controlled buy, including its surveillance, was so compromised as to render the evidence insufficient to sustain a conviction.

[19] We undertake our review of the record mindful of the standard of review. The evidence that favors the verdict is that Mattingly met with Deputy Coleman and, during this meeting, Mattingly engaged in a conversation on a speakerphone with Davis. During that conversation, Mattingly arranged to purchase oxycodone tablets from Davis; the conversation was recorded, and both Deputy Coleman and Mattingly testified that Davis's voice was heard on the recording that was played for the jury. Deputy Coleman testified that he searched Mattingly thoroughly before and after the controlled buy, and that the only difference in Mattingly's possessions were directly related to the buy:

Mattingly left for the buy with a $100 bill and without drugs on his person, and returned without the bill and with five tablets of oxycodone.

[20] A review of the video recording of the controlled buy itself shows Mattingly interacting with an individual that he identified as Davis; Davis was present in person at trial, which afforded the jury an opportunity to examine both the video and Davis in order to weigh the evidence related to whether Davis had a role in the transaction. The video recording shows Davis admit Mattingly to the residence at 430 Lemmon Street and escort Mattingly to another room. In that room, the two men engage in a transaction, and Davis is shown at various times holding a stack of bills and a pill bottle. A third individual was present, but there is little or no interaction between Mattingly and that third individual.

[21] This is sufficient evidence for a jury to infer that Davis sold oxycodone to Mattingly. Davis's arguments to the contrary amount to requests that we reweigh evidence, which we cannot do. We accordingly affirm Davis's conviction for Dealing in a Controlled Substance, as a Class B felony.

## Inappropriateness Review

[22] We turn last to Davis's contention that his sentence is inappropriate.

[23] The authority granted to this Court by Article 7, § 6 of the Indiana Constitution permitting appellate review and revision of criminal sentences is implemented through Appellate Rule 7(B), which provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature

of the offense and the character of the offender." Under this rule, and as interpreted by case law, appellate courts may revise sentences after due consideration of the trial court's decision, if the sentence is found to be inappropriate in light of the nature of the offense and the character of the offender. *Cardwell v. State*, 895 N.E.2d 1219, 1222-25 (Ind. 2008); *Serino v. State*, 798 N.E.2d 852, 856-57 (Ind. 2003). The principal role of such review is to attempt to leaven the outliers. *Cardwell*, 895 N.E.2d at 1225.

[24] Upon conviction for Dealing in a Controlled Substance, as a Class B felony, Davis faced a possible sentencing range running from six to twenty years imprisonment, with an advisory term of ten years. I.C. § 35-50-2-5. The trial court sentenced Davis to thirteen years imprisonment.

[25] The nature of Davis's offense is generally unremarkable. In the context of a controlled buy, Davis sold five oxycodone pills to Mattingly for $100.

[26] Davis's character, though not the worst of the worst, does not speak well of him. Since 1984, Davis has had a series of convictions related to substance abuse, including convictions for Public Intoxication, Operating a Vehicle While Intoxicated, and Possession of Marijuana; he has also been convicted of Theft and Conversion. In several of these cases, Davis was afforded probation in lieu of prison sentences; in at least two cases, Davis's probation was revoked for subsequent criminal conduct. The latest prior conviction and probation revocation occurred in October 2011, and came about due to a conviction for Operating a Vehicle While Intoxicated. Davis's efforts at rehabilitation during

the trial proceedings are commendable, and we recognize the effect of his incarceration upon his family. Nevertheless, in light of a criminal history involving substance abuse over a period of nearly thirty years, it is apparent that Davis has not benefitted from corrective measures short of incarceration.

[27] We accordingly conclude that Davis's thirteen-year sentence is not inappropriate.

# Conclusion

[28] Davis lacks any basis for an appeal related to the trial court's statements to the jury. There was sufficient evidence to sustain Davis's conviction, and his sentence is not inappropriate.

[29] Affirmed.

Baker, J., and Mathias, J., concur.