## Curtis Lee WEIDA, Appellant–Defendant,

v.

## STATE of Indiana, Appellee–Plaintiff.

### No. 34A02–0111–CR–764.

Court of Appeals of Indiana.

Nov. 21, 2002.

William C. Menges, Jr., Howard County Public Defender, Kokomo, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nandita G. Shepherd, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Curtis Weida ("Weida") was convicted of Conspiracy to Commit Murder,[1] a Class A felony, and Confinement,[2] as a Class B felony, in Howard Circuit Court. The trial court vacated the Confinement conviction on double jeopardy grounds, but sentenced Weida to fifty years executed for the Conspiracy to Commit Murder conviction. Weida appeals and raises two issues, which we restate as:

I.  Whether the evidence was sufficient to support Weida's conviction for Conspiracy to Commit Murder; and,

II.  Whether the trial court abused its discretion when it refused to give Weida's tendered jury instruction on withdrawal from conspiracy.

We affirm in part, reverse in part and remand for a new trial on the Conspiracy to Commit Murder count.

## Facts and Procedural History

The facts most favorable to the verdict reveal that on more than one occasion prior to June 13, 2000, Weida told Kristen Gross ("Gross"), a young woman residing in his home, that he had fantasies that involved kidnapping a young boy and performing sexual acts on him. Tr. pp. 332–33. Weida also informed Gross that he wanted to kill a young boy and have sex with his dead body. Tr. pp. 338–39.

On June 13, 2000, Weida asked Gross to go for a drive with him. During the drive, Weida informed Gross that they were driving around "to look for a kid." Tr. p. 328. Weida and Gross observed several young boys, and Weida made comments about them stating, for example, that a given boy was too old. Tr. pp. 341–42.

Eventually, Weida and Gross arrived in Kokomo, Indiana. While driving through a neighborhood, Weida and Gross observed a young boy, I.P.,[3] standing on the side of the road. Upon seeing I.P., Weida asked Gross, "[w]hat do you think," to which Gross replied, "[t]oo young." Tr. p. 344. Weida then drove around the block and stopped the car near I.P. Gross asked Weida, "what do you want me to do, what's going on, what are you going to do?" Weida responded, "[w]ell, you're going to get out of the car and ask for directions to the mall or something." Tr. p. 345.

Gross got out of the car and asked I.P. how to get to the mall. As he began to tell

---

1.  Ind.Code § 35–41–5–2 (1998); Ind.Code § 35–42–1–1 (1998 & Supp.2002).

2.  Ind.Code § 35–42–3–3 (1998).

3.  I.P. was ten years old.

her, Gross told him to tell Weida. As I.P. moved closer to the car to give Weida directions, Weida pushed up the front passenger seat and Gross shoved I.P. into the back of the car. Weida then gave Gross, who was in the backseat with I.P., a plastic "band" to tie I.P.'s wrists together, which she did. Before they had spotted I.P., Weida had shown the band to Gross and told her that she could use it to tie up a boy's hands. Tr. p. 354.

As they were driving out of Kokomo, Gross attempted to convince Weida that they should let I.P. go because she did not want Weida to kill I.P. Gross then made a failed attempt to burn the plastic band off of I.P.'s wrists. Weida told her that "if [they] couldn't get him loose there was no option." Tr. p. 359. Gross's understanding of that statement was that if she could not remove the band from I.P.'s wrists, Weida would kill him. Weida eventually stopped at a gas station and borrowed a pair of scissors that were used to cut the band around I.P.'s wrists. Weida then told I.P. to stick out his hands, put a gun in them, and stated "[t]hat's what's going to happen to you if you tell." Tr. p. 361. Weida drove back to Kokomo, and before they dropped I.P. off, Weida stated, "[n]ow you remember what will happen, we know where you live." Tr. p. 384.

On September 18, 2000, Weida was charged with Conspiracy to Commit Murder, a Class A felony, and Confinement, as a Class B felony.[4] On September 17, 2001, a jury trial began, and the jury found

Weida guilty of both charges. At the sentencing hearing, the trial court vacated the Confinement conviction on double jeopardy grounds, but sentenced Weida to fifty years executed for the Conspiracy to Commit Murder conviction. Weida now appeals. Additional facts will be provided as necessary.

## I. Sufficiency of Evidence

Weida argues that the evidence was insufficient to support his conviction for Conspiracy to Commit Murder. Our standard of review for sufficiency claims is well settled. We do not reweigh the evidence or assess the credibility of witnesses. *Thompson v. State*, 728 N.E.2d 155, 159 (Ind.2000). We look to the evidence and the reasonable inferences to be drawn therefrom that support the verdict. *Id.* Where there is substantial evidence of probative value to support the verdict, it will not be disturbed. *Jordan v. State*, 691 N.E.2d 487, 489 (Ind.Ct.App.1998).

To convict Weida of Conspiracy to Commit Murder, the State had to prove that while having the intent to commit murder,[5] Weida and Gross entered into an agreement to commit murder, and either Weida or Gross performed an overt act in furtherance of the agreement. *See* Ind. Code § 35–41–5–2 (1998). However, the State was not required to prove that murder was actually committed or even attempted.[6] *See Hammond v. State*, 594 N.E.2d 509, 515 (Ind.Ct.App.1992), *trans. denied.* Weida argues that the evidence did not establish that he intended to kill

---

**4.** Weida was also charged with Child Molesting, but that charge was dismissed on September 5, 2001.

**5.** Murder is defined as the knowing or intentional killing of another human being. Ind. Code § 35–42–1–1 (1998 & Supp.2002).

**6.** We also note that in many instances the alleged overt act in a conspiracy would also

constitute a substantial step toward the commission of a crime, which is an essential element in an attempt conviction. *See State v. Anderson*, 751 N.E.2d 714, 717 (Ind.Ct.App. 2001). This is the reason for the prohibition against conviction for conspiracy to commit a crime and conviction for attempt to commit the same underlying crime. *See* Ind.Code § 35–41–5–3 (1998).

I.P. or that there was an agreement between himself and Gross to do so.

■ The State is not required to establish the existence of a formal express agreement to prove a conspiracy. *Cockrell v. State*, 743 N.E.2d 799, 804 (Ind.Ct.App. 2001). " 'It is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to commit the offense.' " *Id.* (quoting *Porter v. State*, 715 N.E.2d 868, 871 (Ind.1999)). An agreement can be inferred from circumstantial evidence, which may include the overt acts of the parties in furtherance of the criminal act. *Wallace v. State*, 722 N.E.2d 910, 913 (Ind.Ct.App. 2000) (citing *Chambers v. State*, 526 N.E.2d 1176, 1178 (Ind.1988)). With regard to the intent element, we note that to determine whether the defendant had the requisite intent to commit the crime alleged, " '[t]he trier of fact must usually resort to circumstantial evidence or reasonable inferences drawn from examination of the circumstances surrounding the crime.' " *Brown v. State*, 659 N.E.2d 652, 657 (Ind.Ct.App.1995), *trans. denied* (quoting *Davis v. State*, 635 N.E.2d 1117, 1120 (Ind.Ct.App.1994)).

At trial, Gross testified that she and Weida had several conversations concerning Weida's fantasies that involved performing sexual acts on the dead body of a young boy. On the date they drove to Kokomo, Weida had two guns in the car and a plastic band. Weida told Gross that the band could be used to tie a boy's hands together. Tr. p. 354. Weida drove through several towns and made comments about the young boys they observed indicating for example that a given boy was too old. Although Gross testified that she had no intent to kill I.P., she was aware of Weida's fantasies and testified that she knew Weida wanted to act out those fantasies after they spotted I.P., and he told her to ask him for directions. Tr. p. 345. Furthermore, Gross actively participated in the crime by shoving I.P. into the car after Weida had pushed up the front seat and by tying the plastic band around I.P.'s wrists. Tr. pp. 348, 352. From this evidence, the jury could have reasonably concluded that Weida intended to kill I.P. and that he and Gross entered into an agreement to do so. Therefore, the evidence presented at trial was sufficient to support Weida's conviction for Conspiracy to Commit Murder.

## II. Tendered Jury Instruction

■ Weida also argues that the trial court abused its discretion when it refused to give his tendered jury instruction regarding withdrawal from the conspiracy. "The giving of jury instructions lies within the trial court's sound discretion, and we review the court's refusal to give a tendered instruction for an abuse of that discretion." *Elmer Buchta Trucking, Inc. v. Stanley*, 744 N.E.2d 939, 944 (Ind.2001). We consider the following to determine whether the trial court abused its discretion when it refused to give a tendered instruction: "1) whether the instruction correctly states the law; 2) whether there is evidence in the record supporting the instruction; and 3) whether the substance of the instruction is covered by other instructions." *Id.* "Moreover, one seeking a new trial on the basis of an improper jury instruction must show 'a reasonable probability that substantial rights of the complaining party have been adversely affected.' " *Id.* (citing *Peak v. Campbell*, 578 N.E.2d 360, 362 (Ind.1991) (quoting *Sullivan v. Fairmont Homes, Inc.*, 543 N.E.2d 1130, 1140 (Ind.Ct.App.1989), *trans. denied* )).

At trial, Weida tendered the following jury instruction:

To withdraw from conspiracy, defendant must cease his activity in the conspiracy and take affirmative act to defeat or

disavow conspiracy's purposes either by making full confession to the authorities or by communicating his withdrawal in a manner reasonably calculated to inform co-conspirators, and his withdrawal must be both complete and in good faith.

Appellant's App. p. 190. Withdrawal from a conspiracy is an affirmative defense under federal law and Weida's instruction adequately describes the elements of that defense. *See United States v. Wilson*, 134 F.3d 855, 863 (7th Cir.1998), *cert. denied.* However, withdrawal from a conspiracy has not been recognized as a defense under Indiana law. In his brief, Weida argues that his tendered instruction is a correct statement of the law of the defense of abandonment, which was not covered by any other instruction; therefore, the trial court abused its discretion when it refused to give the instruction to the jury.

The State argues that Weida's tendered instruction was not a correct statement of the law of the abandonment defense. Indiana Code section 35–41–3–10 describes the defense of abandonment and provides:

> [I]t is a defense that the person who engaged in the prohibited conduct voluntarily abandoned his effort to commit the underlying crime and voluntarily prevented its commission.

Ind.Code § 35–41–3–10 (1998).[7] "To be considered voluntary, the decision to abandon must originate with the defendant, not as a result of extrinsic factors that increase the probability of detection." *Estep v. State*, 716 N.E.2d 986, 987 (Ind.Ct.App. 1999) (citing *Smith v. State*, 636 N.E.2d 124, 127 (Ind.1994)). Also, the defendant must have forsaken the criminal plan before completion of the underlying crime or before it became inevitable. *Babin v. State*, 609 N.E.2d 3, 5 (Ind.Ct.App.1993),

*trans. denied* (citing *Sheckles v. State* 501 N.E.2d 1053, 1055 (Ind.1986)). Comparing the defenses of withdrawal and abandonment, it is clear that they consist of the same concepts because both defenses require that the defendant forsake the conspiracy.

However, the State contends that the tendered withdrawal instruction "reduces Defendant's burden in establishing the affirmative defense of abandonment." Br. of Appellee at 7. We disagree. The defense of withdrawal requires the defendant to *affirmatively* act to defeat the conspiracy, whereas the defense of abandonment requires only that the defendant *voluntarily* abandon his effort to commit the crime. Like lesser-included offenses, an analogy could be made that abandonment is a lesser-included defense of withdrawal. For example, if a group of individuals agrees to rob a bank, and one of those individuals voluntarily decides to forsake his part in the conspiracy, those facts might be sufficient to establish the defense of abandonment. However, those facts would clearly not be sufficient to establish the defense of withdrawal unless the individual took some affirmative act to defeat the conspiracy, such as contacting the police.

Although abandonment is clearly established as a defense by statute, withdrawal has never been recognized as a defense in Indiana. While the defendant bears the additional burden of demonstrating that he took an affirmative act to defeat the goals of the conspiracy to establish the withdrawal defense, withdrawal and abandonment are essentially the same defense. The instruction was not covered by other instructions and there was evidence in the record that would support giving the with-

---

**7.** The defense of abandonment may only be raised if the defendant has been charged with 1) conspiracy, 2) attempt, or 3) aiding, inducing or causing an offense. Ind.Code § 35–41–3–10 (1998).

drawal instruction to the jury because Weida did not attempt to murder I.P., but rather he set him free. Under these extraordinary facts and circumstances, we hold that refusal of Weida's withdrawal instruction was an abuse of the trial court's discretion.

### Conclusion

The evidence presented at trial was sufficient to support Weida's conviction for Conspiracy to Commit Murder. However, the trial court abused its discretion when it refused to give his tendered instruction regarding the defense of withdrawal. Therefore, we reverse Weida's conviction for Class A felony Conspiracy to Commit Murder, but we further order the trial court to reinstate Weida's Class B felony Confinement conviction pending the result of any retrial.[8]

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

BAILEY, J., and SULLIVAN, J., concur.

---

8. In his Appellant's brief, Weida also argues that the trial court erred when it found certain aggravating circumstances that warranted the imposition of an enhanced sentence. Because we remand this case for a new trial on the Conspiracy count, we need not address this issue.