**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**EARL MCCOY**
**CHAD MONTGOMERY**
McCoy & Montgomery Law Office
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DARREN ENGLERT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A04-1302-CR-88 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Randy J. Williams, Judge
Cause No. 79D01-1107-MR-3

**October 17, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

After torturing and brutally murdering Jeremy Gibson, appellant-defendant Darren Englert was convicted following a jury trial of Conspiracy to Commit Murder,[1] a class A felony; Conspiracy to Commit Criminal Confinement,[2] a class B felony; Criminal Confinement,[3] a class D felony; Conspiracy to Commit Battery,[4] a class C felony; Battery,[5] a class C felony; and Possession of Marijuana,[6] a class A misdemeanor. Englert now appeals and argues that the evidence was insufficient to support his convictions, his convictions violate the Double Jeopardy Clause of the Indiana Constitution, the prosecutor engaged in misconduct, and the trial court erred in sentencing him. Finding that because the trial court entered a judgment of conviction on all convictions and that it should have vacated the convictions that it merged for sentencing purposes, we vacate Englert's convictions for conspiracy to commit murder, criminal confinement, and conspiracy to commit battery, and affirm the remaining convictions and sentence.

## FACTS

Gibson and Carolann Clear began a romantic relationship in May 2011. Shortly thereafter, Clear and her mother, Joanne, moved into Gibson's one bedroom apartment in

---

[1] Ind. Code § 35-41-5-2; Ind. Code § 35-42-1-1.

[2] I.C. § 35-41-5-2; I.C. § 35-42-3-3.

[3] I.C. § 35-42-3-3.

[4] I.C. § 35-41-5-2; I.C. § 35-42-2-1.

[5] I.C. § 35-42-2-1.

[6] Ind. Code § 35-48-4-11.

Lafayette. Gibson, the father of two young children that did not live with him, was employed as a dishwasher at a local restaurant. Neither Clear nor her mother was employed. In June 2011, Gibson and Clear met Englert and Antonio Williams at a party. Both men were unemployed. Shortly thereafter, Gibson invited Englert and Williams to move into his apartment. The two men accepted Gibson's invitation and agreed to help Gibson pay for food and rent. Problems began immediately. Although Clear apparently still considered Gibson to be her boyfriend, she and Englert became involved in a sexual relationship, and Gibson asked Joanne to move out, which angered Clear.

At approximately 2:00 a.m. on July 6, 2011, less than a week after they moved into Gibson's apartment, Englert and Williams attacked Gibson in the kitchen when he returned home from work. Williams was apparently angry because he believed Gibson had "disrespected" Clear. Tr. p. 463. The two men hit Gibson with their fists and kicked him. Gibson, who was much smaller than his attackers, was unable to defend himself. After beating Gibson, Englert and Williams removed Gibson's clothing, hog-tied his wrists and ankles with a dog collar and belt, threw him in a cold shower, and left him there for ten to fifteen minutes to rinse off his blood.

While Gibson was in the shower, Englert, Williams, and Clear sat in the living room and discussed what to do with Gibson. Clear suggested killing him. Englert and Williams dragged Gibson out of the shower, untied him, and told him to get dressed. Gibson was in no condition to resist at that point, and Williams announced that they were

3

all going for a ride in Joanne's roach-infested compact-sized car. Williams got into the driver's seat, and Gibson was placed in the front seat with a belt around his neck. Englert sat directly behind Gibson and restrained him with the belt. Clear sat next to Englert and taunted Gibson while performing oral sex on Englert.

Williams drove to an acquaintance's house and took a pick axe, a hatchet, a shovel, and a gas can out of the acquaintance's garage. Englert, Williams, and Clear discussed digging a six foot by six foot hole, beating Gibson, and burying him. Williams then drove out to County Road 500 North in Tippecanoe County. During the drive, Gibson pleaded for his life. He told Englert and Williams that he didn't want to die because he had babies, and that they could have Clear and his SNAP food stamp benefits card.

At some point, Williams stopped the car on the county road, removed Gibson from the vehicle, and placed a plastic bag over his head. Clear removed the tools from the car, and Englert dug a shallow hole next to a corn field. Williams shoved Gibson into the hole, and Englert handed Williams the pick axe. Both Williams and Englert beat Gibson with the tools until he was dead and then removed his bloody clothing. They left the belt around Gibson's neck. Because the hole Englert dug wasn't deep enough to bury Gibson, Englert and Williams put Gibson in a fetal position and covered his body with dirt and corn stalks from a nearby cornfield. Englert and Williams discussed burning Gibson's body, but Clear told them that the nearby trees would catch fire.

4

Immediately after leaving the scene, Englert, Williams, and Clear drove to a bridge and threw the shovel, pick axe, and hatchet into the Wabash River. They threw Gibson's shoes into a dumpster, and returned to Gibson's apartment to clean up the bloody kitchen. They hid the bloody clothes that Gibson was wearing when he died under the stove. About 7:00 a.m., Englert and Clear used Gibson's SNAP card to purchase soda and snacks at the Village Pantry. Clear telephoned the restaurant that employed Gibson and asked for his paycheck.

Later that day, Englert and Williams drove Joanne's car to an Ace Hardware store where Williams stole a large bag of mulch and a bottle of hydrochloric acid. The two men returned to Gibson's gravesite and poured acid on Gibson to destroy evidence. They also covered Gibson's body with the mulch. The men left the mulch bag and acid bottle in Joanne's car. When they returned to Gibson's apartment, Joanne cleaned out her car and threw the mulch bag and acid bottle in the front yard.

That night, Clear told a friend that Englert and Williams had killed Gibson. The friend called the Lafayette Police Department and reported that Gibson was missing. Lafayette Police Department Officer Shana Wainscott responded to the call at approximately 1:00 a.m. on July 7 and spoke with Clear's friend, who took the officer to Gibson's apartment. Officer Wainscott observed the mulch bag and acid bottle in the front yard. She and Officer Jacob Daubenmeir knocked on the front door, and Joanne invited them in to look around the apartment. The officers noticed Gibson's wallet on the

5

living room floor and asked Joanne to contact Clear. Shortly thereafter, the officers noticed Clear, Williams, and Englert walking down the middle of the street towards the apartment. Although initially cooperative, they all became agitated and aggressive when questioned about Gibson. They eventually refused to answer additional questions and returned to Gibson's apartment. As the officers continued their investigation in the front yard, Englert and Williams came out of the apartment and taunted the officers about failing to arrest them. Later that morning, Officer Daubenmier arrested Englert for minor consumption of alcohol. Marijuana was found in Englert's wallet. When questioned at the police station, Englert gave several false statements as to where Gibson might be. When asked about the cuts and other injuries to his hands, arm, and neck, Englert became agitated and said he injured himself while peeling potatoes.

Officers at Gibson's apartment found Gibson's blood in the shower and on the kitchen floor. The dog collar used to hog-tie Gibson was found on the bathroom floor between the toilet and the shower. Gibson's blood was also found on the rubber seal on the trunk of Joanne's car. Officers were eventually able to locate Gibson's burial site with Williams' help. The officers found a blood-stained plastic bag at the side of Gibson's grave. As the officers slowly excavated the burial site by removing the corn stalks, mulch, and dirt, their eyes began to burn from the hydrochloric acid. Williams also directed the officers to the Wabash River where they recovered the pick axe, shovel, and hatchet.

6

The State charged Englert with Count I, conspiracy to commit murder as a class A felony; Count II, murder; Count III, conspiracy to commit confinement as a class B felony; Count IV, confinement as a class B felony; Count V, conspiracy to commit battery as a class C felony; Count VI, battery as a class C felony; Count VII, conspiracy to commit fraud as a Class D felony; Counts VIII and IX, two counts of fraud as a class D felony; and Count X, possession of marijuana as a class A misdemeanor. Following amendments to the charging information, Englert pleaded guilty to murder in March 2012. He proceeded to trial on the remaining nine counts in November 2012.

The evidence at trial revealed that Gibson sustained injuries consistent with both a hatchet and the pick side of a pick axe. His body also showed a pour pattern from the hydrochloric acid. Specifically, the injuries consistent with the hatchet were a five-inch laceration to the left side of his neck that severed his carotid artery and jugular vein, and a five-inch laceration to the right side of his head and neck that cut through his ear, fractured his cervical vertebra, and severed his spinal cord. The wound to the spinal cord was fatal. The injuries consistent with the pick side of the pick axe were circular wounds that fractured his jaw, knocked out his teeth, entered his brain, and entered the belt that had been cinched around his neck and pushed it into his neck. Gibson also sustained a laceration to his upper lip and bruises on the top of his head, his left ankle, and right thigh.

The jury found Englert guilty of Count I, conspiracy to commit murder; Count III, conspiracy to commit confinement; Count IV, confinement; Count V, conspiracy to commit battery; Count VI, battery, and Count X, possession of marijuana. Englert was found not guilty of the three fraud related charges. The trial court entered judgment of conviction in the Chronological Case Summary on all six counts.

At the sentencing hearing, the trial court found four aggravating factors: 1) the harm, injury, and loss or damage suffered by Gibson was significant and greater than the elements necessary to prove the commission of the offense; 2) Englert's criminal history; 3) Englert's substance abuse history; and 4) the seriousness and nature of the crime. The trial court found no mitigating factors and expressly rejected Englert's proffered mitigators of his age, mental health, and hardship to his child.

Also at the sentencing hearing, the trial court merged several of the convictions. Specifically, the trial court merged the convictions for conspiracy to commit murder and conspiracy to commit battery with the murder conviction. The trial court also merged the criminal confinement conviction with the conviction for conspiracy to commit criminal confinement. After merging the convictions, the trial court sentenced Englert to sixty-one years for murder, eighteen years for conspiracy to commit criminal confinement, one year for battery, and one year for possession of marijuana. The trial court ordered the eighteen-year sentence for conspiracy to commit criminal confinement to run consecutive with the sixty-one year sentence for murder. The court further ordered the one-year

8

sentences for battery and possession of marijuana to run concurrent with each other and consecutive with the murder and conspiracy convictions for a total executed sentence of eighty years. Englert now appeals his convictions and sentence.

## DISCUSSION AND DECISION

At the outset we note that the trial court entered a judgment of conviction on each of Englert's convictions for conspiracy to commit murder, conspiracy to commit criminal confinement, criminal confinement, conspiracy to commit battery, battery, and possession of marijuana. For sentencing purposes, the trial court merged the convictions for conspiracy to commit murder and conspiracy to commit battery with Englert's murder conviction, and the criminal confinement conviction with the conspiracy to commit criminal confinement conviction. However, if the trial court enters a judgment of conviction on a jury's guilty verdict, then simply merging the offenses is insufficient and vacation of the offenses is required. Kovats v. State, 982 N.E.2d 409, 414-15 (Ind. Ct. App. 2013). We therefore vacate Englert's convictions for conspiracy to commit murder, conspiracy to commit battery, and criminal confinement. The only convictions available for review in this appeal are conspiracy to commit criminal confinement, battery, and possession of marijuana.

## I. Sufficiency of the Evidence

Englert argues that there is insufficient evidence to support his convictions for conspiracy to commit murder, conspiracy to commit criminal confinement, and

9

conspiracy to commit battery. Because we have just vacated Englert's convictions for conspiracy to commit murder and conspiracy to commit battery, the sole issue is whether there is sufficient evidence to support Englert's conviction for conspiracy to commit criminal confinement.

Our standard of review for sufficiency claims is well settled. We neither reweigh the evidence nor judge the credibility of the witnesses. Perrey v. State, 824 N.E.2d 372, 373 (Ind. Ct. App. 2005). We only consider the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom. Id. Where there is substantial evidence of probative value to support the judgment, it will not be set aside. Id.

To convict Englert of conspiracy to commit criminal confinement, the State had to prove that while having the intent to commit criminal confinement, Englert, Williams and/or Clear entered into an agreement to commit criminal confinement, and either Englert, Williams, or Clear performed an overt act in furtherance of the agreement. See Weida v. State, 778 N.E.2d 843, 846 (Ind. Ct. App. 2002). Criminal confinement is defined in Indiana Code section 35-42-3-3, which provides:

A person who knowingly or intentionally:

(1) confines another person without the other person's consent; or

(2) removes another person, by fraud, enticement, force, or threat of force, from one (1) place to another;

10

Here, Englert argues that there is insufficient evidence that he, Williams, and/or Clear entered into an agreement. The State is not required to establish the existence of a formal express agreement to prove a conspiracy. Weida, 778 N.E.2d at 847. It is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to commit the offense. Id. An agreement can be inferred from the circumstantial evidence, which may include the overt acts of the parties in furtherance of the criminal act. Id.

Our review of the evidence reveals that after Williams took the shovel and tools from his acquaintance's garage, he, Englert, and Clear discussed digging a hole, beating Gibson and burying him. During the conversation, Gibson was restrained in the car with a belt around his neck. This evidence supports Englert's conviction for conspiracy to commit criminal confinement.

## II. Double Jeopardy

Englert also argues that his convictions for conspiracy to commit murder, conspiracy to commit criminal confinement, and conspiracy to commit battery violate the Double Jeopardy Clause of the Indiana Constitution and the one conspiracy, one conviction rule. However, we have just vacated Englert's convictions for conspiracy to commit murder and conspiracy to commit battery, leaving only the conspiracy to commit criminal confinement conviction available for appellate review. Thus, there is no double jeopardy violation.

11

### III. Prosecutorial Misconduct

Englert next argues that the prosecutor engaged in misconduct when she "improperly argued to the jury that [it] should convict Englert of Conspiracy to Commit Murder, Conspiracy to Commit Criminal Confinement . . . and Conspiracy to Commit Battery . . . under an accomplice liability theory. Tr. 770-71 and 780-81." Appellant's Br. p. 25. As previously discussed, the sole conviction left for review is the conspiracy to commit criminal confinement. Thus we address only whether the prosecutor engaged in misconduct when she improperly argued to the jury that it should convict Englert of conspiracy to commit criminal confinement under an accomplice liability theory.

Englert has waived appellate review of this issue for two reasons. First, it is the responsibility of the appellant to support his argument with appropriate legal authorities as well as appropriate sections of the record. Badelle v. State, 754 N.E.2d 510, 541 (Ind. Ct. App. 2001). Without both, we cannot consider the merits of the claim and thus consider the issued waived. Id. Here, as the State points out, Englert has "cite[d] generally to transcript page numbers 770-771 and 780-781 [and] does not identify what language he claims was error." Appellee's Br. p. 29. The State is correct that the prosecutor "made more than one statement over the span of these pages and touched on more than one topic and piece of evidence." Id. We are not inclined to peruse these transcript pages in search of support for Englert's argument. See Badelle, 754 N.E.2d at

541 (stating that where appellant fails to support his argument with citation to the record or case law, we are not inclined to do so for him).

Further, when an improper argument is alleged to have been made, the correct procedure is to request the trial court to admonish the jury. Hand v. State, 863 N.E.2d 386, 394 (Ind. Ct. App. 2007). If the party is not satisfied with the admonishment, then he should move for a mistrial. Id. Failure to request an admonishment or move for a mistrial results in waiver. Id. Where a claim of prosecutorial misconduct has not been properly preserved, our standard of review is different from that of a properly preserved claim. Id. Specifically, the defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error. Id. Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. Id. It is error that makes a fair trial impossible or constitutes clearly blatant violations of basic and elementary principles of due process presenting an undeniable and substantial potential for harm. Id.

Here, Englert neither requested an admonishment nor moved for a mistrial. Englert has therefore waived this argument and must show that any misconduct resulted in fundamental error to succeed on appeal. This he has failed to do because he has not established that a fair trial was impossible or that the error constitutes a clearly blatant violation of basic due process principles. Thus, we find no error.

13

## IV. Sentencing

### A. Standard of Review

The determination of a defendant's sentence is within the trial court's discretion, and we review sentences only for an abuse of that discretion. Newman v. State, 719 N.E.2d 832, 838 (Ind. Ct. App. 1999). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. Guzman v. State, 985 N.E.2d 1125, 1132 (Ind. Ct. App. 2013). One way in which a court may abuse its discretion is failing to enter a sentencing statement at all. Id. Other examples include finding aggravating or mitigating factors unsupported by the record, omitting mitigating factors clearly supported by the record and advanced for consideration, or giving reasons that are improper as a matter of law. Brock v. State, 983 N.E.2d 636, 640 (Ind. Ct. App. 2013).

### B. Aggravating Factors

Englert first argues that the trial court abused its discretion by considering the following improper aggravating factors: 1) the harm, injury, and loss or damage suffered by Gibson was significant and greater than the elements necessary to prove the commission of the offense; 2) Englert's prior criminal history; 3) Englert's substance abuse history; and 4) the seriousness of the nature of the crime. We address each of his contentions in turn.

14

Englert argues that the aggravator that the harm, injury and loss or damage suffered by Gibson was significant and greater than the elements necessary to prove the offense was a mere generalized reference to the nature and circumstances of the offense without any evidence that Gibson suffered greater harm than the elements necessary to prove the commission of the offenses. The trial court may assign aggravating weight to the harm, injury, loss or damage suffered by the victim if such harm was significant and greater than the elements necessary to prove the commission of the offense. Sharkey v. State, 967 N.E.2d 1074, 1078 (Ind. Ct. App. 2012). Here, in finding this aggravator, the trial court explained that this murder involved torture and was a calculated and personal killing. The trial court also explained that it couldn't imagine what was going through Gibson's head during the trip out to 500 North after he had already been beaten and was pleading for his life because he had babies. We find no abuse of the trial court's discretion.

Englert further contends that his criminal history was not a proper aggravating factor. Specifically, Englert appears to believe that his prior criminal history was so minor as to be insignificant. He is correct that the significance of criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense. Rutherford v. State, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). However, progressively more violent conduct is a valid aggravating circumstance. Rawson v. State, 865 N.E.2d 1049, 1056 (Ind. Ct. App. 2007). Here, the trial court pointed out at the

15

sentencing hearing that although Englert was only twenty years old at the time he committed these offenses, he had an informal adjustment in 2006 at age 15, and an adjudication as a delinquent child in 2008. In addition, motions for modification were filed because of Englert's marijuana use. He was subsequently placed on house arrest and then in secure detention. Englert was on a diversion for criminal trespass in May 2011 at the time he committed these offenses. The trial court did not err in considering Englert's criminal history to be an aggravating factor.

Englert also argues that the trial court erred in considering his substance abuse history as an aggravating factor. Specifically, he appears to argue that the trial court abused its discretion in considering this factor because it demonstrated criminal activity and thus should not be considered separate from his criminal history. However, a history of substance abuse may constitute a valid aggravating factor. Iddings v. State, 772 N.E.2d 1006, 1018 (Ind. Ct. App. 2002). Here, the presentence investigation report reveals that Englert began using alcohol at age fourteen and drugs at age sixteen. He has used marijuana up to four times a day, synthetic marijuana, mushrooms, ecstasy, lortab, and Adderall. The night he murdered Gibson, he took several vicodin and klonopin. Based on this history of substance abuse, the trial court did not err in finding Englert's substance abuse history to be an aggravating factor.

In addition, Englert argues that the trial court erred in finding the seriousness of the nature of the crime as an aggravating factor. The nature and circumstances of the

16

crime as well as the manner in which the crime is committed is a valid aggravating factor. Bethea v. State, 983 N.E.2d 1134 (Ind. 2013). Here, the trial court found that on July 5 and 6, 2011, Englert was the "worst of the worst." Tr. p. 893. Specifically, the trial court observed that Englert "participated in a sadistic, systematic, torture, and execution of Jeremy Gibson, followed by the subsequent mutilation in an attempt to destroy his identity." Tr. p. 893. The trial court did not consider improper aggravating factors. We find no error.

### C. Mitigating Factors

Englert further argues that there are four factors that the trial court should have considered as mitigating factors in determining his sentence: 1) the fact that he pleaded guilty; 2) his mental health; 3) his age; and 4) the hardship on his infant daughter. Although a sentencing court must consider all evidence of mitigating factors offered by a defendant, the finding of mitigating factors rests within the court's discretion. Henderson v. State, 769 N.E.2d 172, 179 (Ind. 2002). A court does not err in failing to find mitigation when a mitigation claim is highly disputable in nature, weight, or significance. Id. The trial court is not obligated to explain why it did not find a factor to be significantly mitigating. Sherwood v. State, 749 N.E.2d 36, 38 (Ind. 2001). Furthermore, while Indiana law mandates that the trial judge not ignore facts in the record that would mitigate an offense, and a failure to find mitigating factors that are clearly supported by the record may imply that the trial court failed to properly consider them, an allegation

17

that the trial court failed to find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. Carter v. State, 711 N.E.2d 835, 838 (Ind.1999).

Englert first claims that the trial court abused its discretion because it did not consider his guilty plea to be a mitigating circumstance. Where the State reaps a substantial benefit from the defendant's plea, the defendant deserves to have a substantial benefit returned. Comer v. State, 839 N.E.2d 721, 728 (Ind. Ct. App. 2005). However, a guilty plea is not automatically a significant mitigating factor. Id. The plea may also be considered less significant if there was substantial admissible evidence of the defendant's guilt and the decision to plead guilty is merely a pragmatic one. Caraway v. State, 959 N.E.2d 847, 853 (Ind. Ct. App. 2011). Here, Englert pleaded guilty to murder, one of ten counts, and went to trial on the other nine. There was also substantial admissible evidence of Englert's guilt on that count. Under these circumstances, we find no abuse of the trial court's discretion.

Englert also argues that the trial erred in failing to consider age and mental health as a mitigating factor because he was "twenty (20) years of age and suffered from a dependent personality disorder and was unable to function adequately on his own, lacked self-confidence, and chose to follow the lead of other people when it came to what he should be doing and what he should be thinking." Appellant's Br. p. 37. Age is neither a statutory nor a per se mitigating factor. Monegan v. State, 756 N.E.2d 499, 504 (Ind.

2001).  The Indiana Supreme Court has observed that there are both relatively old offenders who seem "clueless" and relatively young offenders who appear "hardened and purposeful."  Ellis v. State, 736 N.E.2d 731, 736 (Ind. 2000).  Further, this Court has previously outlined the following factors that bear on the weight, if any, that should be given to mental illness in sentencing:  1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; 2) overall limitations on functioning; 3) the duration of the mental illness; and 4) the extent of any nexus between the disorder or impairment and the commission of the crime.  Biehl v. State, 738 N.E.2d 337, 340 (Ind. Ct. App. 2000).  Here, the trial court rejected Englert's age as a mitigating factor because of the nature of the offense and Englert's mental health because it did not see a "Svengali like hold to assist in the commission of the offenses . . . ."  Tr. p. 895.  We find no abuse of the trial court's discretion.

Englert further argues that the trial court erred in failing to consider the hardship to his dependent infant daughter as a mitigating factor.  We note that the relevant consideration is whether incarceration will impose an undue hardship.  Jones v. State, 790 N.E.2d 536, 540 (Ind. Ct. App. 2003).  Additionally, the Indiana Supreme Court has noted that many persons convicted of serious crimes have one or more children, and, absent special circumstances, trial courts are not required to find that imprisonment will result in an undue hardship.  Dowdell v. State, 720 N.E.2d 1146, 1154 (Ind. 1999).

19

Englert has not asserted any special circumstances here, and we again find no abuse of the trial court's discretion.

## D. Inappropriate Sentence

Lastly, Englert argues that his eighty-year executed sentence is inappropriate. Pursuant to Indiana Appellate Rule 7(B), we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. Reid v. State, 876 N.E.2d 1114, 1116 (Ind. 2007). The defendant has the burden of persuading us that his sentence is inappropriate. Id.

With regard to the nature of the offenses, Englert beat Gibson in Gibson's apartment, hog-tied him and placed him in the shower, removed him from the shower, led him to the car, held a belt around his neck in the car while Gibson's girlfriend performed a sexual act on him, removed Gibson from the car, placed a bag over his head, dug his grave, beat him to death with a hatchet while Williams beat him with a pick axe, removed his clothes, covered his body with cornstalks and dirt, and disposed of the murder weapons in the Wabash River. Englert cleaned up Gibson's bloody kitchen, and returned to the murder site with mulch and hydrochloric acid, which he poured on Gibson's body to destroy evidence. Englert returned to Gibson's home and used Gibson's SNAP card to purchase soda and snacks at Village Pantry.

20

With regard to the character of the offender, twenty-year-old Englert brutally and sadistically murdered Gibson just days after Gibson invited Englert to live in his home. Englert has a criminal history that includes the adjudication of a delinquent act. While on probation, Englert continued to violate the law and was eventually placed in secure detention. In addition, Englert was on a diversion for criminal trespass at the time he murdered Gibson. His prior contacts with the law have not caused him to reform himself.

Based on the foregoing, we cannot say that Englert's eighty-year sentence is inappropriate in light of the nature of the offenses and his character. We therefore decline to revise Englert's sentence.

Englert's convictions for conspiracy to commit murder, criminal confinement, and conspiracy to commit battery are vacated. His remaining convictions and sentence are affirmed.

FRIEDLANDER, J., and VAIDIK, J., concur.